*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-5900

BOBBIE J. CONLEY,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20490—Bernice B. Donald, District Judge.

Argued: June 6, 2006

Decided and Filed: July 7, 2006

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** J. Patten Brown III, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Elizabeth Olson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Elizabeth Olson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Carroll L. Andre III, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

McKEAGUE, Circuit Judge. Defendant-appellant Bobbie Conley appeals the order of the district court requiring her to submit to blood sampling for DNA pursuant to 42 U.S.C. § 14135a. The order was imposed as part of Conley's sentence following the entry of her guilty plea to one count of bank fraud. Conley claims that in her case, the order constitutes an unreasonable search and seizure of her person under the Fourth Amendment. The district court stayed the order pending disposition of this appeal.

For the reasons that follow, the order of the district court requiring the DNA testing is affirmed.

1

# I. BACKGROUND

Conley worked as a bank teller at the First Tennessee Bank in Memphis, Tennessee from October 2002 until March 2004. During her employment, Conley defrauded the bank in 18 separate incidents by entering a "deposit" into her account, and then covering the deposit with funds that she obtained by "shorting" the bank customers throughout the day of her deposit. At the time Conley committed these offenses, she was on probation arising from her conviction for stealing money from her previous employer.

On December 14, 2004, a federal grand jury sitting in the Western District of Tennessee returned an indictment charging Conley with 18 Counts of bank fraud in violation of 18 U.S.C. § 1344. As the result of a plea agreement, Conley pleaded guilty to Count 1 of the indictment on February 15, 2005. At Conley's May 20, 2005, sentencing, the district court granted the government's motion to dismiss Counts 2-18. The court sentenced Conley to time served and three years of supervised release. She was ordered to pay $14,191 in restitution, and a $100 special assessment.

As a condition of her supervised release, Conley was ordered to submit to DNA testing, pursuant to 42 U.S.C. § 14135a. Conley objected to this order, claiming that it was unconstitutional because in her case, the collection did not bear a rational relationship to the Congressional objectives underpinning the statute. The district court ruled that it was not able to "carve out" an exception for Conley, because the statute requiring DNA testing of felons is clear and unambiguous on its face. However, the district court stayed the collection of the DNA sample pending this appeal.

# II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this case because Conley was indicted by a federal grand jury on December 14, 2004, for alleged violations of 18 U.S.C. § 1344. This court has jurisdiction to hear the present appeal pursuant to 28 U.S.C. § 1291. The defendant filed this timely notice of appeal from the final judgment in a criminal case entered on June 9, 2005. We review the reasonableness of a Fourth Amendment search *de novo*. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998).

# III. ANALYSIS

Title 42 U.S.C. § 14135a requires the collection of DNA identification information in certain circumstances. The relevant provisions state:

a) Collection of DNA samples

(1) From individuals in custody

\* \* \*

(B) The Director of the Bureau of Prisons shall collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d) of this section) or a qualifying military offense, as determined under section 1565 of Title 10.

(2) From individuals on release, parole, or probation
The probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample from each such individual who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d) of this section) or a qualifying military offense, as determined under section 1565 of Title 10.

* * *

(d) Qualifying Federal offenses
The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses, as determined by the Attorney General:

(1) Any felony

* * *

42 U.S.C.A. § 14135a.

Conley asserts that the collection of her DNA violates the Fourth Amendment, because a search requires some individualized suspicion of wrongdoing. Further, she argues that the DNA testing does not meet the requirements of the "special needs" doctrine, because her liberty interest is greater than the government's interest in obtaining her DNA. She further argues that the search fails the "totality of the circumstances" test. We consider each issue in turn.

## A. Individualized Suspicion

Conley argues that the collection of her blood for the purpose of DNA testing implicates the "reasonableness" requirement of the Fourth Amendment. She claims that in order for a search to be reasonable, there must be some individualized suspicion toward the person subject to search. She cites *Griffin v. Wisconsin* to support her assertion that while a probationer's freedom from unreasonable governmental action is more limited than the average citizen, there must still be "reasonable grounds" for a warrantless search. 483 U.S. 868, 872 (1987). Conley argues that *Griffin* requires individualized suspicion for a warrantless search to be conducted.

In *Griffin*, the Court upheld a Wisconsin statute that allowed the warrantless search of a probationer's home, as long as there are "reasonable grounds" to believe the presence of contraband on the premises. *Id.* at 874. The Court found that the "special needs" of law enforcement with regard to probationers justified the departure "from the usual warrant and probable-cause requirements." *Id.* In so deciding, the Court stated that "[s]upervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875. Conley claims that the "reasonable grounds" requirement discussed in *Griffin* shows that an individualized suspicion of wrongdoing must be present before a search can be performed.

Conley also claims that *United States v. Knights* supports the individualized suspicion requirement. 534 U.S. 112 (2001). In *Knights*, a probation officer searched Knights' apartment, relying on an agreement in Knights' probation documents permitting, *inter alia*, a warrantless search of his home. Shortly after Knights was placed on probation, a utility transformer was set on fire. Knights had long been suspected of engaging in vandalism against the affected power company. During an investigation of the fire, police saw Knights' companion leaving Knights' apartment carrying what appeared to be pipe bombs. The officer entered Knights' apartment and found additional evidence linking Knights to the fire. *Id.* at 114-15.

Knights moved to suppress the evidence based on the warrantless search. The Supreme Court ruled that the search of Knights' home was justified in view of the totality of the circumstances. *Id.* at 118 ("[W]e conclude that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances.'") (citation omitted). Conley asserts that although the Court found that the search was reasonable under the Fourth Amendment, it did not "dispose of the requirement of individualized suspicion." Appellant Br. at 15.

In response, the government argues that a search need not be based on probable cause or individualized suspicion to be reasonable under the Fourth Amendment. In *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989), the Supreme Court found that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." Further, the Court in *United States v. Knights* stated:

> We do not decide whether . . . a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion.

534 U.S. at 120 n.6.

Likewise, the *Griffin* court offered no opinion concerning the necessity of individualized suspicion for a law enforcement official to conduct a warrantless search. Rather, the Court crafted a narrow holding, finding that the search in *Griffin* "was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid [Wisconsin] regulation governing probationers." *Griffin,* 483 U.S. at 880. The Court also stated that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Id.* at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

Thus, Conley's assertion that there must be individualized suspicion underlying any legitimate search under the Fourth Amendment is not supported by the cases she cites, and is a misstatement of the law. In *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 624 (1989), the Court stated "that a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable." *Id.* (citing *United States v. Martinez- Fuerte*, 428 U.S. 543, 561 (1976)).

## B. Special Needs

In *Griffin*, the Supreme Court ruled that law enforcement has "special needs" coincidental to its obligation to supervise probationers, and that these "special needs" justified the warrantless search of Griffin's home. *Griffin*, 483 U.S. at 873-74. Conley asserts that there are no governmental "special needs" warranting the collection of her DNA, because the rationale underlying the maintenance of the DNA database serves only an impermissible law enforcement purpose. She argues that the government's purpose in collecting the DNA is two-fold: 1) to help exonerate the wrongfully convicted, and 2) to help solve future crimes. She claims that because she cannot be exonerated by the DNA sample, the only purpose of the collection in her case is the impermissible law enforcement purpose of detecting future crimes. *Id.*

Conley relies on *Ferguson v. City of Charleston,* 532 U.S. 67 (2001) and *City of Indianapolis v. Edmond,* 531 U.S. 32 (2000), to support her assertion that the Court has forbidden warrantless searches absent any individualized suspicion in instances, like this, when the only "special needs" of law enforcement are detecting criminal behavior. In *Ferguson*, the Court held that a state hospital's notification of law enforcement officials when the hospital detected cocaine in the urine samples of pregnant women was unconstitutional. 532 U.S. at 84. And, in *Edmond*, the Court ruled that the use of drug-sniffing dogs at a police roadblock absent individualized suspicion was a violation of the Fourth Amendment. 531 U.S. at 42 ("We are particularly reluctant to recognize exceptions to the general rule of individualized suspicion where governmental authorities primarily pursue their general crime control ends.").

Conley likens the collection of her DNA to the unconstitutional searches in *Ferguson* and *Edmond*, because there is no "special need" justifying a warrantless search. She claims that the proffered purposes of the DNA database do not apply to a white collar criminal because: 1) the rate of recidivism is much less in white collar criminals than violent criminals, and 2) the collection of DNA will not exonerate Conley of her crime.

Further, Conley claims that even if the government can identify a "special need" for the collection of her DNA, the government's interest in collecting the DNA from a white collar defendant like her does not outweigh her privacy interest under the balancing test required by the "special needs" doctrine. *See Camara v. Mun. Court,* 387 U.S. 523 (1967). She claims that along with the identification information taken from the DNA sample, the blood sample will reveal medical conditions and other highly personal information that will be subject to repeated search. "The repeated search of [Conley's] personal medical and DNA information without any formulation of individualized suspicion does not comport with the traditional requirements of the Fourth Amendment." Br. of Appellant at 26. This, she claims, is an impermissible intrusion that outweighs the government's "special needs" for DNA sampling.

In response to Conley's claim that there are no "special needs" legitimizing the collection of her DNA, the government points out that three of our sister circuits have found that DNA testing does meet the "special needs" exception articulated in *Griffin*. *See Roe v. Marcotte,* 193 F.3d 72, 79 (2d Cir.1999); *Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004); *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003). The interests of the government in collecting DNA include: 1) the creation of a permanent record of the identities of convicted felons to assist in solving past and future crimes; 2) the deterrence of future criminal acts by felons on release; and 3) the protection of the communities where convicted felons are released, because the DNA collection deters further criminal activity, and the database assists in solving the crimes that may be committed. *See Marcotte,* 193 F.3d at 79, *see also United States v. Kincade*, 379 F.3d 813, 838-39 (9th Cir. 2004).

The government argues that Conley's reliance on *Ferguson* and *Edmond* is misguided, because in those cases, the individuals subject to a warrantless search absent individualized suspicion were not convicted felons. *See Kimler*, 335 F.3d at 1146 (quoting *McKune v. Lile*, 536 U.S. 24, 36 (2002))("A broad range of choices that might infringe constitutional rights in free society fall within the expected conditions . . . of those who have suffered a lawful conviction.").

Further, the Seventh Circuit considered the ruling in *Edmond*, and found that the governmental interest underlying the DNA testing and database at issue here is markedly different than the drug interdiction road blocks considered by the Court in *Edmond*. The Seventh Circuit found that the primary purpose of the roadblocks was to search for evidence of criminal wrongdoing, while the purpose of the DNA collection "is to obtain reliable proof of a felon's identity." *Green*, 354 F.3d at 678. Likewise, the Seventh Circuit found that *Ferguson* was inapposite, because an individual who voluntarily submits to a urine pregnancy test has an expectation of privacy in the results of those tests. *Id.* at 679. In the case of DNA testing, a convicted felon has full knowledge of the purpose of the blood test, and there are proscriptions concerning the unauthorized release of the results to third parties. *Id.* Following the logic of the Seventh Circuit, Conley's assertion that *Edmond* and *Ferguson* require a finding of unconstitutionality here is without merit.

In response to Conley's argument that the low rate of recidivism in white collar criminals negates the need for DNA testing, the government claims that this argument is also without merit. The statistics show that the rate of recidivism in certain groups of white-collar criminals is very close to the rate of recidivism in firearm offenders, and is only slightly lower than felons convicted of robbery. *Id.* (citing *Measuring Recidivism: The Criminal History Computations of the Federal Sentencing Guidelines*, U.S.S.C., Exh. 11 (May 2004)). More importantly, Conley herself is a repeat

offender. She was on probation from a theft conviction at the time she committed the felony leading to this action.

Finally, the government argues that Conley's right to privacy in her DNA information does not override the government's "special needs" in: 1)obtaining reliable proof of a felon's identity, 2) deterring convicted felons from committing additional crimes, or 3) protecting communities. It argues that a blood test is a minimal intrusion, and that the DNA markers that are used for identification purposes do not carry the important medical data that Conley complains will be subject to repeated searches. *Id.* at 9. The government's position is on track with the Second, Seventh, and Tenth Circuits, all of whom agree that the DNA collection meets the requirements of governmental "special needs."

We agree that the "special needs" of law enforcement in obtaining Conley's DNA outweighs her greatly reduced expectation of privacy as a convicted felon.[1]

## C. Totality of the Circumstances

Conley argues that the DNA testing requirement fails the "totality of the circumstances" test discussed in *Knights*, claiming that *Knights* "required a more stringent test than that required under *Griffin*, by requiring that the reasonableness of the search be examined under a totality of the circumstances rather than the special needs doctrine." Br. of Appellant at 16 (citing *Knights*, 534 U.S. at 118). Conley makes no attempt to explain how the test is more stringent, however.

In *Knights*, the Supreme Court determined that the search of Knights was reasonable after "examining the totality of the circumstances." *Id.* at 118. The Court stated that:

> [t]he touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

*Id.* The Court balanced Knights' diminished expectation of privacy as a result of his probationary status against the government's interest in monitoring probationers and preventing recidivism. *Id.* at 120-121. The court found that the government's interests outweighed Knights' significantly reduced expectation of privacy, and found that the search was "reasonable." *Id.*

The government asserts that application of the "totality of the circumstances" balancing test here shows that the government's interest in obtaining a felon's DNA outweighs the probationer's greatly reduced expectation of privacy. The government argues that the "very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law." *Id.* (quoting *Knights*, 534 U.S. at 120) (internal citation omitted). The government's interest in properly identifying criminals and preventing them from further victimizing the community outweighs the limited expectations of privacy of a convicted felon. In support of its argument, the government relies on the Third Circuit's discussion in *United States v. Sczubelek*, 402 F.3d 175 (3d Cir. 2005). In *Sczubelek*, the court stated:

> [m]oreover, we agree with the government that it has a compelling interest in the collection of identifying information of criminal offenders. A DNA database promotes increased accuracy in the investigation and prosecution of criminal cases.

---

[1]While our circuit considered a constitutional due process challenge to the Ohio DNA collection statute in *Williams v. Dep't of Rehab. & Correction,* 3 Fed. Appx. 415, 417-18 (6th Cir. 2001), this court has not previously published an opinion ruling on the constitutionality of the federal DNA statute.

It will aid in solving crimes when they occur in the future. Equally important, the DNA samples will help to exculpate individuals who are serving sentences of imprisonment for crimes they did not commit and will help to eliminate individuals from suspect lists when crimes occur.  While the presence of Sczubelek's DNA in CODIS may inculpate him in the future, it may also exonerate him. The interest in accurate criminal investigations and prosecutions is a compelling interest that the DNA Act can reasonably be said to advance.

*Id.* at 185.  After examining the totality of the circumstances, the Third Circuit ruled that the DNA testing was "reasonable."[2]

On the other side of the "balance," the government asserts that the collection of a blood sample is a minimal intrusion on a convicted felon's diminished expectation of privacy. *Skinner*, 489 U.S. at 625.  And, although Conley asserts that her very intimate, personal medical information is contained in the DNA sample that will be subject to repeated search, the Ninth Circuit noted that "the DNA profile derived from the defendant's blood sample establishes *only* a record of the defendant's identity - otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense."  *Kincade,* 379 F.3d at 837.

We find the government's argument in this case meritorious.  In view of Conley's sharply reduced expectation of privacy, and the minimal intrusion required in taking a blood sample for DNA analysis for identification purposes only, the government's interest in the proper identification of convicted felons outweighs her privacy interest.  Under a totality of the circumstances analysis, the search is reasonable, and does not violate the Fourth Amendment.

## IV.  CONCLUSION

For the aforementioned reasons, the ruling of the district court ordering DNA testing of Conley pursuant to 42 U.S.C. § 14135a(a)(2) is **AFFIRMED**.  The case is **REMANDED**, for the entry of an order **VACATING** the stay of the collection of Conley's DNA.

---

[2] Five of our sister circuits have found that DNA testing for identification purposes was "reasonable" under a totality of the circumstances analysis.  *See Sczubelek*, 402 F. 3d 175 ; *Jones v. Murray,* 962 F.2d 302 (4th Cir. 1992); *Groceman v. United States  Dep't of Justice,* 354 F.3d 411 (5th Cir. 2004); *United States v. Kincade,* 379 F.3d 813 (9th Cir. 2004); *Padgett v. Donald,* 401 F.3d 1273 (11th Cir. 2005).