# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1362

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GEORGE C. HOOK,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 1045—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED SEPTEMBER 27, 2006 —DECIDED DECEMBER 13, 2006

———————

Before POSNER, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* George Clive Hook, a white collar criminal, was scheduled by his probation officer to submit to DNA collection while serving his term of supervised release. Hook filed a verified petition with the district court objecting to this process. The district court denied Hook's petition and ordered him to submit to DNA collection. Hook appeals, and we affirm.

I.

In 1998, George Clive Hook was convicted by a jury of wire fraud, money laundering, and theft involving an employee benefit plan. The district court sentenced Hook to eighty-four months' imprisonment and thirty-six months of supervised release. Among the conditions of his supervised release, the district court ordered Hook to follow his probation officer's instructions and not to commit any additional crimes. After serving his term of imprisonment and over a year of supervised release, Hook's probation officer scheduled him for DNA collection in October 2005 pursuant to the Justice for All Act of 2004, Pub. Law No. 108-405, 118 Stat. 2260, and the DNA Analysis Backlog Elimination Act of 2000, Pub. Law No. 106-546, 114 Stat. 2726 (codified at 42 U.S.C. §§ 14135-14135e) (collectively "DNA Act"). Hook filed a verified petition in the district court alleging that the DNA collection violated his contract with the government, violated his rights under the Fourth, Fifth, Eighth, Ninth, Tenth, and Thirteenth Amendments, and violated the Ex Post Facto and Bill of Attainder clause, Article I, § 9, the Equal Protection clause, Article IV, § 2, of the Constitution, and the separation of powers doctrine. After a hearing, the district court denied Hook's petition, finding the DNA Act constitutional, and ordered him to submit to DNA testing. Hook appeals, raising the issues set forth in his petition and further arguing that the district court abused its discretion in denying his request for termination of supervised release. We first set forth the landscape of the DNA Act and then address each of Hook's claims in turn.

II.

In 2000, Congress enacted the DNA Analysis Backlog Elimination Act, which required DNA samples to be collected from individuals in custody and while on probation, parole, or supervised release after being convicted of certain violent crimes. 42 U.S.C. § 14135a(d) (2001). Congress amended the supervised release statute to add the DNA sample requirement to supervised release. 18 U.S.C. § 3583(d). Then in 2004, Congress passed the Justice For All Act which amended the DNA Act, expanding the list of qualifying offenses to include, as relevant here, any felony. 42 U.S.C. § 14135a(d) (2004). Congress mandated that the United States Probation Office collect DNA samples of those individuals under its supervision and submit those samples to the Federal Bureau of Investigation ("FBI") for inclusion in its Combined DNA Index System ("CODIS"). 42 U.S.C. § 14135a(a)(2), (b). Failure of an individual covered by the DNA Act to submit to DNA collection constitutes a class A misdemeanor subject to punishment according to Title 18. 42 U.S.C. § 14135a(a)(5). The information maintained in CODIS may be disclosed only to law enforcement agencies for "identification purposes," "in judicial proceedings," "for criminal defense purposes," and for statistical and quality control purposes, in the case of the latter if personally identifiable information is first removed. 42 U.S.C. § 14132(b)(3)(A)-(D). Finally, the DNA Act provides a criminal penalty for those who improperly use or disclose CODIS information. 42 U.S.C. § 14133(c).

Against this backdrop, we consider Hook's challenge to the probation officer's directive to submit to DNA collection. In challenging the DNA collection, Hook makes three arguments: First, he claims that requiring him to

submit to DNA collection is an impermissible modification of his term of supervised release. Second, he argues that the district court abused its discretion by failing to consider his request for termination of supervised release. Third, he contends that the imposition of the DNA collection requirement violates a contract he entered into with the United States at the time he was sentenced to a term of supervised release. We review legal questions de novo. *United States v. Celliti*, 387 F.3d 618, 621 (7th Cir. 2004). A district court's imposition of conditions of supervised release or denial of requests for modification is reviewed for abuse of discretion. *United States v. Nonahal*, 338 F.3d 668, 670 (7th Cir. 2003) (citation omitted).

Hook first contends that the DNA collection requirement is a modification of his sentence of supervised release. Specifically, he argues that the DNA collection requirement constitutes an additional, impermissible condition of his term of supervised release because it was not imposed as a condition originally at the time of his sentencing. However, as noted above, the original term of supervised release instituted by the district court required Hook to "follow the instructions of the probation officer" and not "commit another federal, state, or local crime." In this case, the probation officer instructed Hook to submit to DNA collection, and this brings the DNA collection into his original sentence.

Moreover, even if the DNA testing did not fit with the terms of the original sentence, the district court held a hearing on Hook's petition prior to ordering him to comply with the DNA testing. This hearing satisfies the conditions of Fed. R. Crim. P. 32.1(c)(1), which requires a hearing prior to the modification of the terms of supervised release. Therefore, to the extent that there was any modification, the modification was properly made.

Second, Hook asserts that the DNA collection require-
ment violates "the agreement between US [sic] and Hook,"
and that collection breaches his contract with the govern-
ment. There was no plea agreement in this case, but rather
Hook was convicted by a jury. While there is nothing be-
fore us on appeal to suggest that there was an agreement
between the government and Hook regarding sentenc-
ing recommendations, even if such an agreement existed,
the district court is not bound by any recommendations
made by the government at sentencing. *United States v.
Grimm*, 170 F.3d 760, 768 (7th Cir. 1999). Moreover, a
sentence within the sentencing guidelines and below the
statutory maximum does not create a contract. Therefore,
Hook's argument based on contract fails because no con-
tract is present in this situation.

Hook also claims that the district court abused its dis-
cretion by failing to consider his request to terminate
supervised release. Section 3583(e)(1) provides that "a
court *may*, after considering the factors set forth in section
3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6),
and (a)(7)—terminate a term of supervised release and
discharge the defendant released at any time after the
expiration of one year of supervised release . . . ." 18 U.S.C.
§ 3583(e)(1) (emphasis added). The language in this
statute is discretionary, and the district court has wide
discretion in determining whether to terminate an individ-
ual's term of supervised release. *See United States v. Sines*,
303 F.3d 793, 800 (7th Cir. 2002). We find that Hook "makes
no real effort to explain how the district court abused its
discretion in refusing to modify his supervised release
conditions." *Nonahal*, 338 F.3d at 670 (citation omitted).
Rather, Hook merely asserts that he is entitled to a ter-
mination of his supervised release because the govern-

ment attempted to improperly impose an additional
condition of supervised release, namely DNA collection.
Hook believes this somehow should exempt him from the
completion of his term of supervised release. He cites no
authority showing how an attempt to improperly impose
an additional term of supervised release would render
improper any remaining time on supervised release.
Clearly, the statutory mandate for the DNA collection did
not constitute an improper additional term. Accordingly,
the district court did not abuse its discretion by denying
Hook's request for termination of supervised release.[1]

Turning now to Hook's constitutional claims: Hook
asserts that the DNA Act violates numerous sections of the
Constitution, including the Fourth, Fifth, Eighth, Ninth,
Tenth, Thirteenth and Fourteenth Amendments, the Ex
Post Facto and Bill of Attainder Clause, and the separa-
tion of powers doctrine. We begin with Hook's Fourth
Amendment claim. Hook contends that the DNA Act
violates his Fourth Amendment right against unreason-
able searches and seizures and that the DNA Act is not
exempted from the Fourth Amendment warrant require-
ment by either special needs or the totality of the circum-
stances.

In *Green v. Berge*, 354 F.3d 675 (7th Cir. 2004), this court
previously addressed whether a Wisconsin statute requir-
ing convicted felons to furnish DNA samples for a state
data bank violated the Fourth Amendment. In *Green*, we

---

[1] Hook also attempts to challenge the restitution order origi-
nally imposed. Because restitution was part of his original
sentence, any challenge to that order needed to be made on
direct appeal within ten days. Fed. R. App. P. 4(b)(1). Hook did
not appeal from that sentence and cannot challenge the restitu-
tion order.

concluded that taking a DNA sample is a Fourth Amendment search, but that such a search may be reasonable if it falls into an exception to the warrant requirement. *Green*, 354 F.3d at 677. We applied the "special needs" approach, which provides an exemption from the Fourth Amendment warrant requirement when there are "special needs, beyond the normal need for law enforcement, mak[ing] the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985)). The considerations that are examined in determining whether a search qualifies as a special need include the governmental interest involved, the nature of the intrusion, the privacy expectations of the object of the search, and the manner in which the search is executed. *Green*, 354 F.3d at 677 (citation omitted). Key to our holding in *Green* was that the primary purpose of the statute was not to search for evidence of criminal wrongdoing, but to "obtain reliable proof of a felon's identity," that those subject to the law were aware of the purpose of the collection, and that there were safeguards to protect against unauthorized use of the information. *Id.* at 678-79. We concluded that the Wisconsin statute was "narrowly drawn," served an "important state interest," provided the "most reliable evidence of identification" of those in custody, and therefore withstood "constitutional attack under the firmly entrenched 'special needs doctrine.'" *Id.* at 679.

The federal DNA Act mirrors the Wisconsin statute in several important ways. Like the DNA Act, the Wisconsin statute required all imprisoned felons in Wisconsin to submit DNA samples. *Id.* at 676. The Wisconsin statutory scheme also similarly provided that the samples be held at the state crime laboratory subject to confidentiality

provisions and sanctions for misuse of the information. *Id.* (citations omitted). In light of these similarities, we find our analysis in *Green* instructive in addressing Hook's Fourth Amendment challenge of the federal DNA Act.

Hook attempts to distinguish *Green* by focusing on the fact that Green was incarcerated and not on supervised release. The difference between those in custody and those under supervision is a distinction without a difference for the purposes of the DNA Act and the Fourth Amendment. Individuals under supervision are subject to control by the state, although to a lesser degree than those incarcerated. *See id.* at 680 (Easterbrook, J., concurring). Those under supervised release "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special restrictions.'" *Griffin*, 483 U.S. at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (describing individuals on parole or probation)). Furthermore, the management of supervised release "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873. Therefore, insofar as *Green* addresses the special needs of DNA collection statutes, we find it instructive.

As we noted in *Green,* "state and federal courts that have [addressed the validity of DNA collection statutes] are almost unanimous in holding that these statutes do not violate the Fourth Amendment." *Green*, 354 F.3d at 677 (citation omitted), *see also Johnson v. Quander*, 440 F.3d 489, 496 (D.C. Cir. 2006); *United States v. Conley*, 453 F.3d 674, 677 (6th Cir. 2006); *United States v. Kraklio*, 451 F.3d 922, 924 (8th Cir. 2006); *United States v. Sczubelek*, 402 F.3d 175, 184 (3d Cir. 2005); *Groceman v. U.S. Dept. of Justice*, 354 F.3d 411,

413-14 (5th Cir. 2004); *United States v. Kincade*, 379 F.3d 813, 838-39 (9th Cir. 2004); *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003); *Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir. 1997); *Jones v. Murray*, 962 F.2d 302, 308 (4th Cir. 1992). As we found in *Green*, taking a DNA sample is a Fourth Amendment search, but such a search may be reasonable if it falls into an exception to the warrant requirement. *Green*, 354 F.3d at 677. While some circuits have employed a reasonableness standard, *see, e.g., Sczubelek*, 402 F.3d at 184; *Kraklio*, 451 F.3d at 924, we employed the "special needs" approach in *Green* and will do the same here.

The federal DNA Act seeks to establish a database of accurate felon identification information and to deter recidivism, *see Kincade*, 379 F.3d at 838-39, not to search for information on a specific crime or to detect "ordinary criminal wrongdoing," *City of Indianapolis v. Edmond*, 531 U.S. 32, 38 (2000). The DNA Act also restricts the use of information collected, limiting who may receive the information and penalizing those who misappropriate the information. *See* 42 U.S.C. § 14135e. Furthermore, the probation officer has no discretion about who will be subject to DNA collection: all individuals covered by the DNA Act must provide a DNA sample. *See* 42 U.S.C. § 14135a(a)(2). As we noted above, the statute only covers individuals who are subject to restrictions on their liberty through custody, probation, or supervision. Further, the blood draw that is employed to collect a DNA sample is considered routine, *see Schmerber v. California*, 384 U.S. 757, 771 n.13 (1966) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 436 (1957)), and the intrusion minimal, *Sczubelek*, 402 F.3d at 184. While a DNA sample contained in CODIS may be used at a later date in relation to law enforcement,

such information may also be used to exonerate an individual. *Id.* at 185. Regardless, the special need is primary and "goes beyond the ordinary law enforcement need." *Kimler*, 335 F.3d at 1146. All of these characteristics of the DNA Act support a finding that it qualifies as a special need justifying a departure from the usual warrant and probable cause requirements of the Fourth Amendment. *See Griffin*, 483 U.S. at 873. Accordingly, applying the reasoning in *Green* to the federal DNA Act, we conclude that because "DNA testing of [supervised releasees] is ultimately for a law enforcement goal, it seems to fit within the special needs analysis the [Supreme] Court has developed for drug testing and searches of probationers' homes, since it is not undertaken for the investigation of a specific crime." *Green*, 354 F.3d at 678 (citation omitted). Therefore, we conclude that the DNA Act does not violate the Fourth Amendment.

Hook next argues that the DNA collection requirement violates his Fifth Amendment rights by inducing self-incrimination and depriving him of property without due process. Hook, however, did not provide citation support or substantive argument for his assertion that the DNA Act constitutes a deprivation of property without due process. Therefore, this argument is waived, and we need not address it. *See United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990). His claim of unconstitutional self-incrimination also fails because the taking of blood samples or fingerprints is not testimonial evidence and as such is not protected by the Fifth Amendment. *United States v. Pipito*, 861 F.2d 1006, 1009 (7th Cir. 1987) (citing *Schmerber v. California*, 384 U.S. 757 (1966)). The Fifth Amendment also does not protect photographing or requiring an individual to speak for identification purposes. *Id.* Accordingly, the DNA collection done here by

means of a non-testimonial blood draw is not protected by the Fifth Amendment. Moreover, the information that is extracted from the blood, DNA, is another form of physical, genetic identification of an individual not unlike a photograph or fingerprint and is thus also not protected by the Fifth Amendment.

We next address Hook's equal protection argument.[2] Hook argues that applying the DNA Act to him because he was on "supervised release for federal offenses which had nothing to do with bodily fluids" is a denial of his right to equal protection. The equal protection clause of the Constitution "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006). The level of scrutiny applied in determining whether the appropriate protection has been afforded depends upon the class that is involved, i.e., a suspect, quasi-suspect, or other classification. *Artway v. Att'y Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Felons are not a

---

[2] Although Hook does not classify his equal protection claim under the Fifth Amendment, the Supreme Court has noted that while the Fourteenth Amendment applies to the states, the Fifth Amendment applies to the federal government and also "contains an equal protection component." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987). The approach to Fifth Amendment equal protection claims has "been precisely the same as to equal protection claims under the Fourteenth Amendment." *Id.* (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

protected class, and therefore the government need only have a rational basis for the DNA Act. *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1125 (7th Cir. 1983). To prevail on his claim, then, Hook "must prove the following: (1) the defendant intentionally treated him differently from others similarly situated, (2) the defendant intentionally treated him differently because of his membership in the class to which he belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith*, 457 F.3d at 650-51 (citation omitted).

As a threshold matter, Hook does not identify those similarly situated to himself who are treated differently by virtue of the DNA Act. In any event, the DNA Act is rationally related to the government's interests in deterring recidivism and maintaining accurate identification information of criminals, regardless of the rate of recidivism among certain types of offenders. *See United States v. Conley*, 453 F.3d 674, 679 (6th Cir. 2006) (citation omitted) (upholding the DNA Act and noting that "rate of recidivism in certain groups of white-collar criminals is very close to the rate of recidivism in firearm offenders, and is only slightly lower than felons convicted of robbery," in response to a white collar defendant's challenge of the DNA Act as applied to white collar criminals). Therefore, in light of this rational basis and the minimal inconvenience presented to Hook by submitting to a blood draw, we find no equal protection violation.

In addition to the Fourth and Fifth Amendments, Hook contends that the DNA Act violates the Eighth Amendment. "The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally

without penological justification." *Whitman v. Nesic*, 368
F.3d 931, 934 (7th Cir. 2004) (citations omitted). As stated
above, blood draws are considered routine. *See Schmerber
v. California*, 384 U.S. 757, 771 n.13 (1966) (quoting
*Breithaupt v. Abram*, 352 U.S. 432, 436 (1957)). Further, the
government's desire for identifying information along
with the minimal pain and discomfort accompanying a
blood draw take the DNA Act outside of the ambit of
cruel and unusual punishment. Under these circum-
stances, DNA collection does not constitute cruel and
unusual punishment.[3]

We now turn to Hook's Ninth, Tenth, and Thirteenth
Amendment claims. "We repeatedly have made clear that
perfunctory and undeveloped arguments, and arguments
that are unsupported by pertinent authority, are waived
(even where those arguments raise constitutional issues)."
*United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000)
(citing *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th
Cir. 1991)); Fed. R. App. P. 28(a)(4). In this case, Hook fails
to elucidate what rights, if any, he has retained by virtue of
the Ninth Amendment which the DNA Act violates. Hook
also fails to cite any case law in support of his Ninth
Amendment claim. Similarly, as the district court stated
in addressing Hook's Tenth Amendment claim, Hook
"fails to assert any authority in support of his argument"

---

[3] Hook provides an uncited, but novel assertion that the
Founding Fathers would have considered "blood extraction" to
be "cruel and unusual punishment" because, purportedly,
"[v]ampires were feared and vilified" at the time of the Found-
ing. Even accepting this proposition, blood extraction by a
vampire is certainly distinguishable from a sanitary blood draw
under current medical practice.

that the DNA Act violates the Tenth Amendment. Hook's invocation of the Tenth Amendment, without any explication, is "perfunctory and undeveloped." Further, his arguments regarding any Commerce Clause implications are without citation or merit.[4] Finally, regarding his Thirteenth Amendment claim, Hook fails to provide any citation or basis for his assertion that the "punishment" of the DNA collection constitutes enslavement. Merely setting forth a constitutional amendment and asserting a violation, without further explication, does not present an issue for review and results in a waiver of that issue. Therefore, we deem Hook's Ninth, Tenth, and Thirteenth Amendment claims waived.

We turn now to Hook's claims under Article 1, section 9, clause 3 of the Constitution that the DNA Act violates the Ex Post Facto Clause and constitutes a bill of attainder. In determining whether a statute constitutes a retroactive law in violation of the Ex Post Facto Clause, the court looks to the purpose of the legislation. *Gilbert v. Peters*, 55 F.3d 237, 238 (7th Cir. 1995) (citing *Trop v. Dulles*, 356 U.S. 86, 96 (1958)).

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or

---

[4] Hook asserts that his blood is outside the scope of the Commerce Clause because it regenerates every 120 days, and he has not traveled out of state in over 120 days. Were we to accept this argument, we might be prompted to recommend a blood draw every four months, but for the fact that there is no indication that Hook also produces new DNA during regeneration, perhaps thankfully so for Hook.

effect as to negate [the State's] intention to deem it civil.

*Smith v. Doe*, 538 U.S. 84, 92 (2003) (citations omitted).

The D.C. Circuit in *Johnson v. Quander*, 440 F.3d 489, 500-01 (D.C. Cir. 2006), recently upheld the federal DNA Act and the D.C. implementation statute against an Ex Post Facto claim. The D.C. Circuit held that the anti-recidivism and public safety provisions cited by the U.S. Supreme Court in *Smith* were applicable to the DNA Act and evinced that the DNA Act was punitive in neither purpose nor effect. We agree. The purpose of the DNA Act, as stated above, is to have a national registry of information regarding those covered by the statute and to deter future criminal conduct. Such administrative intent is not punitive. As for the effect, it involves a blood test and retention of information, neither of which is punitive. *Gilbert*, 55 F.3d at 238-39 (holding that a blood specimen statute does not violate the Ex Post Facto Clause). In the event that Hook had committed other crimes for which he might be convicted as a result of his DNA being collected, any punishment that he would receive would be in relation to a new conviction, not his original conviction, and thereby would not violate the Ex Post Facto Clause. Furthermore, the DNA Act does not operate retroactively to punish Hook for his original crime, but rather any punishment that would ensue would be the result of new conduct, i.e., Hook's failure to comply with the DNA Act. Accordingly, we affirm the district court's rejection of Hook's assertion that the DNA Act violates the Ex Post Facto Clause of the Constitution.

Hook also contends that the DNA Act constitutes a bill of attainder which the Constitution prohibits Congress from passing under Article I, section 9, clause 3. A law is a bill

of attainder if it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm. of Gen. Serv.*, 433 U.S. 425, 468 (1977). The DNA Act applies to those who have already been convicted of a crime and by its terms does not determine guilt or innocence. Further, as set forth above, the DNA Act does not inflict punishment on those who are subject to it, as its purpose is to establish a national database of identifying information and to deter recidivism. The means by which this is accomplished, a blood test, is minimally intrusive and is not punitive. *See Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992). Therefore, we find that the DNA Act does not constitute a bill of attainder.

In his final constitutional argument, Hook asserts that the DNA Act violates the separation of powers doctrine. The separation of the three branches of government is essential to liberty, however that separation is not complete and entire. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). While law enforcement is an executive function and a probation officer serves a supervisory function of the judicial branch, a probation officer's collection of DNA does not violate the separation of powers. The probation officer neither analyzes the DNA nor conducts investigations in collecting DNA pursuant to the DNA Act. Moreover, such collection is analogous to a probation officer in his supervisory capacity preventing a supervisee from using drugs by means of drug testing. *United States v. Sczubelek*, 402 F.3d 175, 188-89 (3d Cir. 2005). Further, as the Third Circuit noted, there is no encroachment on the executive's ability to perform law enforcement functions by virtue of the probation officer's collection of DNA because the probation officer has no role in how the

information is used once he submits the sample to the FBI. *Id.* at 189 (citing *Clinton v. Jones*, 520 U.S. 681, 701 (1997)). Therefore, we find no violation of the separation of powers doctrine and affirm the district court's denial of Hook's separation of powers claim.

## III.

Because Hook has failed to assert a violation on the part of the government regarding his term of supervised release or a successful constitutional challenge of the DNA Act, we AFFIRM the district court's order denying Hook's request for termination of his term of supervised release and ordering Hook to submit to DNA collection pursuant to the DNA Act.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*