Antoine D. WILSON, Plaintiff,

v.

Reginald WILKINSON,
et al., Defendants.

Case No. 2:04–CV–918.

United States District Court,
S.D. Ohio,
Eastern Division.

March 6, 2007.

---

892

William J. Pohlman, Elizabeth H. Smith, Gina R. Russo, Thomas Howard Fusonie, Pearl Chin, Vorys Sater Seymour & Pease LLP, Columbus, OH, David A. Singleton, Ohio Justice & Policy Center, Cincinnati, OH, for Plaintiff.

Philip A. King, The Supreme Court of Ohio Office of Disciplinary Counsel, Richard Thomas Cholar, Jr., Ohio Attorney General, Columbus, OH, for Defendants.

## OPINION AND ORDER

NORAH McCANN KING, United States Magistrate Judge.

Antoine D. Wilson ("plaintiff") is an African–American male in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and is currently incarcerated at the Ross Correctional Institution ("RCI")Plaintiff asserts claims under 42 U.S.C. § 1983 ("Section 1983"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI") and the laws of the State of Ohio, challenging Ohio's DNA Act, Ohio Revised Code ("O.R.C.") § 2901.07, ("the Act"), which requires the collection and storage of deoxyribonucleic acid ("DNA") specimens from certain individuals. Named as defendants in this action are the former Director of ODRC Reginald Wilkinson, Warden of RCI Pat Hurley, the former Ohio Attorney General Jim Petro and Superintendent of the Ohio Bureau of Criminal Identification and Investigation ("BCI") John Monce, Jr.

With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendants' Motion for Summary Judgment,* Doc. No. 61, and on *Plaintiff Antoine D. Wilson's Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment"),* Doc. No. 62. For the reasons that follow, *Plaintiff's Motion for Summary Judgment* is **DENIED** and *Defendants' Motion for Summary Judgment* is **GRANTED.**

## I. FACTS

The Act compels persons convicted of certain enumerated felonies and misdemeanors ("offenders") to submit to a DNA specimen collection procedure administered by defendants. *See* O.R.C. § 2901.07. The Act also requires that the specimens be analyzed to create DNA records or profiles for entry into a computer DNA database operated and maintained by BCI. *Id.* BCI operates a state laboratory in London, Ohio; it also utilizes private laboratories located throughout Ohio to conduct DNA analyses. *Complaint* ¶ 17. Both BCI and the private laboratory contractors must meet national standards for DNA testing. *Affidavit of Elizabeth Ann Benzinger* [1] *("Benzinger Aff.")* § III ¶ 5 attached as *Exhibit A* to *Defendants' Motion for Summary Judgment.* During the DNA analysis and before the DNA record is stored, all demographic information, including race, is separated from the offender DNA samples. *Id.*

Offender DNA is stored in the Ohio DNA Index System. Doc. No. 73, *Notice of Declaration of Assistant Attorney General Philip A. King at Expert Summary of Dr. Julie A. Heinig ("Heinig Expert Summary")* [2] ¶ 1. Ohio, like all other states, participates in the Federal Bureau of Investigation's ("FBI") Combined DNA Index System ("CODIS"). *Id.* ¶ 7; *Complaint* ¶ 28. CODIS operates through the FBI's National DNA Index System ("NDIS"), which enables laboratories participating in the CODIS program to exchange and compare DNA records or profiles on a national level. *Id. See also Summary of NDIS Operational Procedures* attached as *Exhibit B* to *Defendants' Motion for Summary Judgment.* Once an offender's DNA specimen is analyzed and verified through specific procedures the specimen is entered into the

---

1. Dr. Benzinger is the DNA Quality Assurance Manager for BCI. *Benzinger Aff.* § II.

2. Dr. Heinig is an Assistant Laboratory Director of Forensic Services at the DNA Diagnostic Center in Fairfield, Ohio, and was retained by defendants as an expert in DNA analysis. *Heinig Expert Summary* ¶ 2. Dr. Heinig's deposition *("Heinig Dep.")* was filed in this action on August 30, 2006. *See* Doc. No. 59.

Ohio DNA Index System and CODIS and is identified only by its unique identifier number. *Benzinger Aff.* § III ¶¶ 1–9. Once an offender record is entered into CODIS, it is searched against other DNA records daily at the state level and weekly at the national level. *Id.* § III ¶ 9.

On October 6, 2003, pursuant to the Act, plaintiff's DNA specimen was collected by swabbing the inside of his mouth for buccal cells. *Complaint,* ¶ 35; O.R.C. § 2901.07(C). Plaintiff's DNA specimen, like all other samples taken under the Act, was sent for analysis to create a DNA profile and that record was entered into and is stored on CODIS. *Id.* ¶ 36.

On September 27, 2004, plaintiff filed the instant action. In the *Complaint,* plaintiff asserts both a facial challenge to the Act and an "as-applied" challenge. *Id.* ¶¶ 41–92. Plaintiff claims that the original collection of his DNA violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and that those violations continue in connection with the storage and maintenance of his DNA record. *Id.* Plaintiff asks that defendants be compelled to expunge his DNA records from the state and federal databases and to destroy his DNA specimen. *Id.* pgs. 15–16. Plaintiff also requests a permanent injunction to prevent defendants from conducting further DNA testing on him and to prevent defendants from disclosing his DNA record. *Id.* pg. 17. Finally, plaintiff requests a declaration that the Act is facially unconstitutional, is unconstitutional as applied to him and is unconstitutional as applied to all African–Americans similarly situated to him. *Id.*

## II. STANDARD OF REVIEW

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

To prevail on a claim under Section 1983, a plaintiff must establish the violation of a right secured by the federal Constitution or laws by a person acting under color of state law. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, "not a source

of substantive rights" itself, the "first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citations omitted). There is no dispute that defendants in this action acted under the color of state law. Further, plaintiff alleges that the Act violates the Fourth Amendment's prohibition against unreasonable searches and seizures, the Fifth Amendment's prohibition against self-incrimination, the Due Process Clauses of the Fifth and Fourteenth Amendments and the disparate impact regulations under Title VI.

## A. Right to be Free from Unreasonable Searches and Seizures

■ The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. *See also Wolf v. Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (the Fourth Amendment is enforceable against the states through the Fourteenth Amendment). The Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable. *Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Reasonable searches, even those performed without a warrant, must ordinarily be based on probable cause. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). However, the Supreme Court has also explained that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). "When the balance of interests precludes insistence on a showing of probable cause, [the United States Supreme Court] usually requires 'some quantum of individualized suspicion' before concluding that a search is reasonable." *Id.* (citing as an example *United States v. Martinez–Fuerte*, 428 U.S. 543, 560, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)).

In the instant action, the parties agree that the collection of plaintiff's DNA specimen and its subsequent analysis and retention qualify as searches and seizures subject to the protections of the Fourth Amendment. *Plaintiff's Motion for Summary Judgment* at 15–18; *Defendants' Motion for Summary Judgment* at 5. *See also United States v. Conley*, 453 F.3d 674 (6th Cir.2006) (engaging in a Fourth Amendment analysis of the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a) ("the Federal DNA Act").

All fifty states and the federal government have enacted statutes similar to the Act. Robin Cheryl Miller, J.D., Annotation, *Validity, Construction, and Operation of State DNA Database Statutes*, 76 A.L.R.5th 239 (2006). Appellate courts reviewing Fourth Amendment challenges to these statutes have uniformly held that mandatory collection of DNA samples from individuals such as plaintiff does not constitute an unlawful search and seizure, even absent individualized suspicion. *See e.g., Conley*, 453 F.3d at 679, 680–81 (Federal DNA Act does not violate Fourth Amendment); *Ohio v. Cremeans*, 160 Ohio App.3d 1, 825 N.E.2d 1124, 2005 Ohio 928 (2d App. Dist.2005) (the Act does not violate Fourth Amendment); *Ohio v. Steele*,

155 Ohio App.3d 659, 802 N.E.2d 1127, 2003 Ohio 7103 (1st App.Dis.2003) (same).

Although the constitutionality of offender DNA collection and retention statutes under the Fourth Amendment has been addressed by numerous state and federal courts, there remains some measure of disagreement as to whether the issue is properly analyzed under the special needs doctrine or the traditional totality of the circumstances test. *See United States v. Kincade,* 379 F.3d 813, 838–39 (9th Cir. 2004) (listing twelve cases utilizing the special needs test and twenty-three cases utilizing the totality of the circumstances test).

The two Ohio appellate courts that have held that the Act does not violate the Fourth Amendment to the United States Constitution each utilized a different analysis. In *Ohio v. Steele, supra,* the First Appellate District utilized the special needs test to determine that the Act passed constitutional muster under the Fourth Amendment. In *Ohio v. Cremeans, supra,* the Second Appellate District concluded that, although some courts relied on a special needs analysis, the totality of the circumstances analysis was more appropriate. In considering the Federal DNA Act, the United States Court of Appeals for the Sixth Circuit utilized both the special needs test and the totality of the circumstances test, and ultimately concluded that, under either analysis, the Federal DNA Act did not violate the Fourth Amendment. *See Conley,* 453 F.3d at 679, 680. Following the lead of the Sixth Circuit in *Conley,* this Court too has utilized both tests and concludes that the application of the Act to plaintiff was reasonable under either analysis.

### 1. Special Needs Doctrine

■ In *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) and *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the United States Supreme Court utilized the special needs doctrine to analyze the reasonableness of two different types of searches.[3] Under this doctrine, a search conducted without a warrant or probable cause can be constitutional "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (quoting *T.L.O.,* 469 U.S. at 351, 105 S.Ct. 733 (Blackmun, J., concurring in judgment)). Relying on these decisions, many courts have employed the special needs test to evaluate whether offender DNA statutes violate the Fourth Amendment to the United States Constitution.

The special needs test involves a two-part inquiry. *See, e.g., Conley,* 453 F.3d at 677–79; *Steele,* 155 Ohio App.3d at 670, 802 N.E.2d 1127. First, a court must determine whether the statute meets the special needs threshold, closely reviewing it to determine the primary purpose of the statute and determining whether that purpose goes beyond normal law enforcement needs. *Steele,* 155 Ohio App.3d at 670, 802 N.E.2d 1127. Second, a court must evaluate the reasonableness of the intrusion by balancing the individual's privacy interests against the government's special need. *Id.*

There is sometimes a distinction between a statute's ultimate purpose and its primary purpose. *See Conley,* 453 F.3d at

---

**3.** In *Ferguson,* the Court held that a state hospital's notification of law enforcement officials when the hospital detected cocaine in the urine samples of pregnant women violated the Fourth Amendment. *Ferguson,* 532

U.S. at 84, 121 S.Ct. 1281. In *Edmond,* the Court ruled that the use of drug-sniffing dogs at a police roadblock absent individualized suspicion violated the Fourth Amendment. *Edmond,* 531 U.S. at 42, 121 S.Ct. 447.

678–79 (relying on the analysis in *Green v. Berge,* 354 F.3d 675, 679 (7th Cir.2004)).

While the ultimate purpose in obtaining a DNA sample from a person is to assist law enforcement, the statute's immediate and primary purpose is to fill and maintain a DNA database, a purpose distinct from the regular needs of law enforcement.

*Ferguson* and *Edmond* both involved programs in which a search was undertaken to produce evidence that the searched individual had committed a particular crime. The investigation of an identifiable crime is a core law enforcement activity. For this sort of law enforcement function, courts require probable cause or individualized suspicion before law enforcement authorities are permitted to conduct a search or seizure.

But the courts have stated that DNA statutes are not themselves designed to discover and produce evidence of a specific individual's criminal wrongdoing. A DNA sample is evidence only of an individual's genetic code, which does not, on its own, show the commission of a crime. Unlike a urinalysis that can reflect the presence of illegal substances, the DNA sample only offers the potential to link the donor with a crime. The samples are maintained in the database without reference to the individual, and only a small percentage of the DNA samples are ever linked to any specific crime.... "For these reasons, it is difficult to say that the [Ohio] DNA databank program is one 'whose primary purpose [is] to detect evidence of ordinary criminal wrongdoing.' "

*Steele,* 155 Ohio App.3d at 670, 802 N.E.2d 1127 (quoting *Edmond,* 531 U.S. at 38, 121 S.Ct. 447) (internal citations omitted).

Plaintiff contends that there are no governmental special needs warranting the collection, analysis and retention of his DNA, and that the rationale underlying the maintenance of the Ohio DNA Index System and CODIS serves no need or interest independent of ordinary law enforcement. *Plaintiff's Motion for Summary Judgment* at 23–24. Plaintiff asks this Court to review the statutory language and legislative history underlying the Act, which, he argues neither *Steele, supra,* nor *Conley,* 453 F.3d at 678, did. According to plaintiff, proper consideration of the plain statutory language and the legislative history of the Act would confirm that the primary purpose and the immediate objective of the Act is the solving of crimes—*i.e.,* an insufficient basis for disregarding the warrant and probable cause requirement of the Fourth Amendment. *Plaintiff's Motion for Summary Judgment* at 23–25. However, *Steele* held to the contrary:

We hold that the primary purpose of the search authorized by [the Act] R.C. 2901.07 goes beyond the needs of ordinary law enforcement.

*Steele,* 155 Ohio App.3d at 672, 802 N.E.2d 1127.

This Court is bound by this appellate court's construction of the Act and its interpretation of the legislative intent underlying the Act. *See Brown v. Ohio,* 432 U.S. 161, 167, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (Ohio Courts of Appeals have "final authority to interpret that state's legislation"); *Banner v. Davis,* 886 F.2d 777, 780 (6th Cir.1989) ("When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes").

Even disregarding *Steele's* authoritative construction of the Act, this Court concludes that the Act satisfies the first element of the special needs test. In resolving this conclusion, this Court is guided by the analysis of the Federal DNA Act by the Sixth Circuit in *Conley.*

The interests of the government in collecting DNA include: 1) the creation of a permanent record of the identities of convicted felons to assist in solving past and future crimes; 2) the deterrence of future criminal acts by felons on release; and 3) the protection of the communities where convicted felons are released, because the DNA collection deters further criminal activity, and the database assists in solving the crimes that may be committed.

*Conley* at 678 (citing *Roe v. Marcotte,* 193 F.3d 72, 79 (2d Cir.1999) and *Kincade,* 379 F.3d 813, 838–39 (9th Cir.2004)). Plaintiff argues that, "if the factors cited in *Conley* are cognizable 'special needs,' then the special needs exception will have effectively swallowed the Fourth Amendment prohibition against warrantless, suspicionless searches and seizures." *Plaintiff's Motion for Summary Judgment* at 25.[4] This Court disagrees and concludes that the Act has satisfied the first element of the special needs test.

The second element of the special needs test requires an evaluation of the reasonableness of the challenged intrusion by balancing plaintiff's privacy interests against the government's special need. *See Conley,* 453 F.3d at 679. Plaintiff argues that the search and seizure permitted by the Act is overbroad because it entails not just the collection of his DNA[5] but also the exposure of all the personal information contained in his DNA. *Plaintiff's Motion for Summary Judgment* at 19. In opposition, however, defendants establish that plaintiff's DNA profile in the Ohio DNA Index System and in CODIS is used for identification only. *Heinig Expert Summary* ¶ 11. *See also Benzinger Aff.* ¶¶ 1–14; *Conley, supra,* at 680 (finding that the DNA record kept in CODIS merely reflects the offender's identity). Thus, this Court must determine the reasonableness of the collection and retention of plaintiff's DNA specimen and profile by balancing plaintiff's privacy interest in his identification as reflected in his DNA record with the government's special needs as outlined *supra.*

Initially, the Court notes that prisoners and probationers have diminished expectations of privacy. *Griffin,* 483 U.S. at 874, 107 S.Ct. 3164; *Hudson v. Palmer,* 468 U.S. 517, 524–528, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Further, the taking of blood or saliva samples are minimal intrusions. *See Skinner,* 489 U.S. at 625, 109 S.Ct. 1402 (citing *Schmerber,* 384 U.S. at 771, 86 S.Ct. 1826). Under these circumstances, the Court concludes that the special needs of law enforcement in obtaining plaintiff's DNA outweighs plaintiff's greatly reduced expectation of privacy as a convicted felon. *See Conley,* 453 F.3d at 679 ("We agree that the 'special needs' of law enforcement in obtaining Conley's DNA outweighs her greatly reduced expectation of privacy as a convicted felon.").

Accordingly, even viewing the evidence in the light most favorable to plaintiff, there is no issue of material fact as to whether the search and seizure authorized by the Act are reasonable under the special needs test.

---

4.  Plaintiff relies heavily on *United States v. Weikert,* 421 F.Supp.2d 259, 265 (D.Mass. 2006), which concluded that the Federal DNA Act failed the first prong of the special needs test: "The government's purpose is not merely the disinterested creation of a database. Instead, the government's purpose is to obtain information related to possible crimes that the individual subject to the search may have committed." That case is currently pending appeal. *See also United States v. Stewart,* 468 F.Supp.2d 261 (D.Mass.2007).

5.  The Court will address the search and seizure associated with the collection of plaintiff's DNA in more detail *infra.*

## 2. Totality of the Circumstances Test[6]

In *Conley, supra*, after analyzing the reasonableness of the search authorized by the Federal DNA Act under the special needs test, the United States Court of Appeals for the Sixth Circuit evaluated that statute under the totality of the circumstances test. *See Conley*, 453 F.3d at 679–81. The traditional test for reasonableness under the Fourth Amendment is the totality of the circumstances test:

> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."

*United States v. Knights*, 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)(quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)).

Defendants claim for the State of Ohio the same governmental interests as those articulated by the federal government in *Conley. Defendants' Motion for Summary Judgment* at 8–10. According to the defendants, the government has a legitimate interest in properly identifying criminals and preventing them from further victimizing the community. *Id.* at 680 (citing with approval *United States v. Sczubelek*, 402 F.3d 175 (3d Cir.2005), *cert. denied*, 548 U.S. 919, 126 S.Ct. 2930, 165 L.Ed.2d 977 (2006)).

A DNA database promotes increased accuracy in the investigation and prosecution of criminal cases. It will aid in solving crimes when they occur in the future. Equally important, the DNA samples will help to exculpate individuals who are serving sentences of imprisonment for crimes they did not commit and will help to eliminate individuals from suspect lists when crimes occur. While the presence of Sczubelek's DNA in CODIS may inculpate him in the future, it may also exonerate him. The interest in accurate criminal investigations and prosecutions is a compelling interest that the DNA Act can reasonably be said to advance.

*Id.* (quoting *Sczubelek, supra*). *Conley* concluded that these compelling government interests outweigh a prisoner's "sharply reduced expectation of privacy, and the minimal intrusion required in taking a blood sample for DNA analysis for identification purposes only[.]" *Id.*

Plaintiff, however, takes the position that the Act is potentially a far greater intrusion than the initial extraction of DNA, since the state keeps the DNA specimen and maintains the DNA records indefinitely. *Plaintiff's Motion for Summary Judgment* at 19. Although current forensic DNA analysis may be restricted to "junk DNA," *i.e.*, the 97% of an individual's DNA that has no known function except to accurately and uniquely establish identity,[7] plaintiff argues that, as technolo-

---

**6.** Although, at first glance, the totality of the circumstances test appears to be the same as the second part of the special needs test, there is an important difference in the two analyses. When assessing the government interest underlying DNA testing and maintenance of CODIS in the totality of the circumstances test, general law enforcement is a permissible, and indeed an important, interest. In contrast, the special needs test forbids general law enforcement as the primary purpose underlying the government's interest in DNA testing and maintenance of a DNA database; instead, the government must show a special need exclusive of the need to solve crimes. *See Conley*, 453 F.3d at 679–80 (analyzing separately part two of the special needs test and the totality of the circumstances test).

**7.** Forensic DNA analysis is currently restricted to those parts of the chromosome with no known functions. *Heinig Dep.* at 105–107. More specifically, the FBI has selected from

gy advances, it is probable that the DNA specimen will be retested, raising the risk of even greater intrusions and abuses. *Plaintiff's Motion for Summary Judgment* at 8; *See also Heinig Dep.* at 105–07.

The Court declines to base its decision on speculation and imponderables. Moreover, the Act does not provide for analysis beyond that designed to establish identity—*See* O.R.C. § 2901.07—"otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense." *Conley* at 681 (quoting *Kincade,* 379 F.3d at 837). *Cf. Johnson v. Quander,* 440 F.3d 489, 498 (D.C.Cir.2006) ("We conclude that accessing the records stored in the CODIS database is not a 'search' for Fourth Amendment purposes.") The constitutional implications, if any, of presently unknown advances in technology must await resolution at the appropriate time and on a suitable record.

This Court concludes, as did the court in *Conley,* that the defendants' compelling interests substantially outweigh plaintiff's sharply reduced expectation of privacy, and that the minimal intrusion required in taking a saliva or blood sample for DNA analysis and the indefinite retention and searches of the samples for identification purposes outweigh plaintiff's privacy interest.[8] *See Conley,* 453 F.3d at 680. Accordingly, even when viewing the evidence in the light most favorable to plaintiff, there is no issue of material fact as to whether the searches and seizures authorized by the Act are reasonable under the totality of the circumstances test. As it relates to plaintiff's claims under the Fourth Amendment, *Defendants' Motion for Summary Judgment* is **GRANTED.**

## B. Right Against Self-incrimination

◼ The Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. *See also Malloy v. Hogan,* 378 U.S. 1, 6–11, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (the Fifth Amendment's protection against compulsory self-incrimination is incorporated in the Due Process Clause of the Fourteenth Amendment and thus applies to the states). Plaintiff contends that, because his DNA profile will be maintained in the Ohio DNA Index System and in CODIS indefinitely, should he "ever run

---

the junk DNA 13 different loci to serve as the core for forensic analysis. *Id.* at 97–99.

**8.** The *Conley* court noted that:

Five of our sister circuits have found that DNA testing for identification purposes was "reasonable" under a totality of the circumstances analysis. *See United States v. Sczubelek,* 402 F.3d 175 (3d Cir.2005)[, *cert. denied,* 548 U.S. 919, 126 S.Ct. 2930, 165 L.Ed.2d 977 (2006) ]; *Jones v. Murray,* 962 F.2d 302 (4th Cir.1992)[, *cert. denied,* 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992) ]; *Groceman v. United States Dep't of Justice,* 354 F.3d 411 (5th Cir.2004); *United States v. Kincade,* 379 F.3d 813 (9th Cir. 2004) [ (en banc), *cert. denied,* 544 U.S. 924, 125 S.Ct. 1638, 161 L.Ed.2d 483 (2005) ]; *Padgett v. Donald,* 401 F.3d 1273 (11th Cir.)[, *cert. denied sub nom. Boulineau v. Donald,* 546 U.S. 820, 126 S.Ct. 352, 163 L.Ed.2d 61 (2005) ].

*Conley,* 453 F.3d at 680 n. 2. *See also Quander,* 440 F.3d at 496 ("Today we join this unanimous body of authority, and we conclude that the mandatory collection of Johnson's DNA sample was 'reasonable' under the Fourth Amendment's balancing test"), *cert. denied,* 549 U.S. 945, 127 S.Ct. 103, 166 L.Ed.2d 255 (2006); *United States v. Kraklio,* 451 F.3d 922, 924–25 (8th Cir.2006) ("based on the totality of the circumstances, the collection of DNA under the DNA Act for inclusion in the CODIS database does not constitute an unreasonable search and seizure in violation of the Fourth Amendment."), *cert. denied,* 549 U.S. 1044, 127 S.Ct. 611, 166 L.Ed.2d 453 (2006).

afoul of the law in the future, his DNA profile—derived from the forced extraction of his bodily tissue—will undoubtedly be used to incriminate him." *Plaintiff's Motion for Summary Judgement* at 26. Plaintiff therefore argues that the taking of his buccal cells without his consent and the keeping of his DNA profile in the Ohio DNA Index System and in CODIS is a violation of the constitutional right against self-incrimination. *Id.* Plaintiff's claim is without merit.

In *Schmerber v. California, supra,* 384 U.S. at 764–65, 86 S.Ct. 1826, the United States Supreme Court concluded that, while blood test evidence is potentially incriminating, it is neither testimony nor evidence of any communicative act. Thus, *Schmerber* held that the involuntary seizure of a blood sample does not violate the privilege against self-incrimination. *Id.* Applying this same reasoning, federal courts that have held that DNA samples are not testimonial in nature and therefore cannot violate the Fifth Amendment's prohibition against self-incrimination. *United States v. Bean,* 214 Fed.Appx. 568, 569–71 (6th Cir.2007)(unpublished). *See also Vore v. U.S. Dept. of Justice,* 281 F.Supp.2d 1129 (D.Ariz.2003); *Padgett v. Ferrero,* 294 F.Supp.2d 1338, 1344 (N.D.Ga.2003), *aff'd,* 401 F.3d 1273 (11th Cir.), *cert. denied sub nom. Boulineau v. Donald,* 546 U.S. 820, 126 S.Ct. 352, 163 L.Ed.2d 61 (2005); *Shaffer v. Saffle,* 148 F.3d 1180 (10th Cir.), *cert. denied,* 525 U.S. 1005, 119 S.Ct. 520, 142 L.Ed.2d 431 (1998); *Boling v. Romer,* 101 F.3d 1336 (10th Cir.1996); *United States v. Hook,* 471 F.3d 766, 773 (7th Cir.2006); *Thomas v. Hayes,* Case No. 2:04–CV–284, 2006 WL 2708267, *6–7, 2006 U.S. Dist. LEXIS 67250, *22–23 (E.D.Tenn. Sept. 19, 2006); *Taylor v. Norton,* Case No. 05–1634, 2006 WL 1071517, *3–4, 2006 U.S. Dist. LEXIS 22070, *10–11 (D.D.C. Apr. 20, 2006); *Moss v. Johnson,* Case No. 04–CV–0142, 2004 WL 2248262, *1, 2004 U.S. Dist. LEXIS 20049, *2 (N.D.Tex. Oct. 6, 2004).

Plaintiff argues that DNA is in fact testimonial because it could reveal information regarding his physical characteristics, *e.g.,* his eye color, hair color and predisposition to disease, and may reveal information about his behavioral tendencies, or genetically-linked traits, such as anti-social, aggressive, impulsive or violent behavior. *Plaintiff's Motion for Summary Judgment* at 28 (citing Lisa Lewis, *The Role Genetic Information Plays in the Criminal Justice System,* 47 Ariz. L.Rev. 519, 537–540 (2005)). *See also Heinig Dep.* at 107. This Court is not persuaded by plaintiffs argument.

The Act authorizes the use of offender DNA for identification purposes only, and is therefore not unlike compulsory fingerprinting. *See Rise v. Oregon,* 59 F.3d 1556, 1559 (9th Cir.1995) ("the information derived from the blood sample [from which the DNA profile is made] is substantially the same as that derived from fingerprinting—an identifying marker unique to the individual from whom the information is derived").

This Court concludes that, even viewing the evidence in the light most favorable to plaintiff, there is no genuine issue as to whether plaintiff's DNA sample is testimonial in nature. As it relates to plaintiff's claim under the Fifth Amendment right against self-incrimination, *Defendants' Motion for Summary Judgment* is **GRANTED.**

## C. Right to Due Process of Law

The Fifth Amendment to the United States Constitution provides in relevant part that no person may "be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. Similarly, the Fourteenth Amendment provides in relevant part that no state shall "de-

prive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiff alleges that he has been denied his constitutional rights to both substantive and procedural due process. *Complaint* ¶¶ 50–69.

### 1. Substantive Due Process

Defendants argue that a substantive due process analysis not appropriate to the facts asserted by plaintiff. *Defendants' Motion for Summary Judgment* at 11–12. This argument is explained persuasively by the United States District Court for the District of Columbia in a case directly on point:

> In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "where a particular [Constitutional] Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham*, 490 U.S. at 395, 109 S.Ct. 1865); *see also United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). A substantive due process analysis is therefore inappropriate in this case if the plaintiffs claim is covered by the Fourth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).
>
> Here, it is clear that the plaintiffs constitutional challenge is "covered by" the Fourth Amendment. As discussed above, it is without question that the taking of blood for DNA analysis is a "search and seizure" under the Fourth Amendment. Accordingly, the Fourth Amendment, and not the substantive due process guarantees of the Fifth Amendment, is the proper benchmark under which the plaintiffs claim must be evaluated. The plaintiff's substantive due process claim must therefore be dismissed.

*Johnson v. Quander*, 370 F.Supp.2d 79, 90 (D.D.C.2005), *aff'd*, 440 F.3d 489 (D.C.Cir.), *cert. denied*, 549 U.S. 945, 127 S.Ct. 103, 166 L.Ed.2d 255 (2006). *See also Quander*, 440 F.3d at 503 (concluding that plaintiff's appeal of his due process claims were "without merit and do not warrant separate discussion").

Although this Court finds defendants' argument in this regard, and *Johnson v. Quander, supra*, persuasive, this Court also concludes that defendants would be entitled to summary judgment on plaintiff's claim even under a traditional Due Process Clause analysis.

The United States Supreme Court has established a two-pronged analysis of a substantive due process claim. "First, [the Court has] regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, 'such that neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal citations omitted). Second, the Court requires "in substantive-due-process cases, a careful description of the asserted fundamental liberty interest." *Id.* (internal citations omitted). Thus, the Fifth and the "Fourteenth Amendment forbid[ ] the government to infringe [on] . . . fundamen-

tal liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (internal citations omitted).

Plaintiff claims an interest in his bodily integrity and in his right to privacy. The United States Supreme Court has recognized an individual's right to bodily integrity. *See Schmerber,* 384 U.S. at 772, 86 S.Ct. 1826 ("The integrity of an individual's person is a cherished value of our society."). Further, although the United States Constitution does not expressly guarantee a right to privacy, the Supreme Court has held that a right to privacy does exist within the liberty component of the Fourteenth Amendment. *See Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

Courts that have addressed this same substantive due process challenge to the compulsory collection of offenders' DNA specimens have held that the "drawing of blood by a medical professional in an acceptable environment is not offensive to the ordinary sense of justice, and therefore, not violative of the Due Process Clause." *Vore,* 281 F.Supp.2d at 1138 (citing *Schmerber,* 384 U.S. at 759–60, 86 S.Ct. 1826). *See also* O.R.C. § 2901.07(C) (requiring the drawing of blood by a medical professional in an acceptable environment).

The Act contemplates the collection of the DNA sample through a blood draw, and also through less intrusive means, *e.g.,* swabbing for buccal cells, as was done in plaintiff's case. O.R.C. § 2901.07(C) ("If the DNA specimen is collected by swabbing for buccal cells or a similarly noninvasive procedure, this section does not require that the DNA specimen be collected by a qualified medical practitioner...."). Even though the swabbing was not performed by a medical professional, however, this Court concludes that this method of collection of buccal cells is not inconsistent with "fundamental rights and liabilities ... deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty...." *See Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258. Plaintiff's substantive due process claim cannot prevail.

■ With regard to plaintiff's asserted privacy interest in the personal information contained in his DNA sample, this Court agrees with the persuasive analysis of the United States Court of Appeals for the Eleventh Circuit in *Padgett v. Donald,* 401 F.3d 1273 (11th Cir.2005). In Padgett, the court considered a prisoner's claim that he enjoyed a Fourteenth Amendment right to privacy in the information contained in his DNA that had been collected and retained under an offender DNA statute. *Id.* at 1280. The *Padgett* court first concluded that the "extraction of saliva itself does not implicate [a prisoner's] interests in avoiding disclosure of information, but rather 'the right of the individual to be free in his private affairs from governmental ... intrusion.'" *Id.* at 1281 (quoting *Whalen v. Roe,* 429 U.S. 589, 599 n. 24, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). The court explained that, while prisoners retain certain fundamental rights to privacy, the right claimed in Padgett "is neither 'fundamental' nor 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Roe,* 410 U.S. at 152, 93 S.Ct. 705). That is, prisoners routinely undergo drug testing, which requires a bodily intrusion similar to the challenged intrusion. *See id.* This and the other restrictions on prisoners' freedom are inherent to their status as prisoners and suggest that the right claimed in connection with the extraction of saliva is not protected by the right to privacy. *See id.*

This analysis applies to plaintiff's claims as well. Plaintiff, as a convicted felon,

does not enjoy the same privacy rights as do ordinary citizens. This Court agrees with the *Padgett* court that the right claimed by plaintiff "is neither 'fundamental' nor 'implicit in the concept of ordered liberty[.]' " That right is therefore not protected by the right to privacy. *See Padgett*, 401 F.3d at 1281 (quoting *Roe*, 410 U.S. at 152, 93 S.Ct. 705). Thus, it is unnecessary for the Court to consider whether the Act is narrowly tailored to serve a compelling state interest. *See Glucksberg*, 521 U.S. at 720–21, 117 S.Ct. 2258.

Consequently, even viewing the evidence in the light most favorable to plaintiff, there is no genuine issue as to whether plaintiff's substantive due process rights have been violated by application of the Act to him. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As it relates to plaintiff's substantive due process claim, *Defendants' Motion for Summary Judgment* is **GRANTED**.

### 2. Procedural Due Process

■ "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ Plaintiff alleges that his DNA was collected without any process and without his consent in violation of his right to bodily integrity. *Complaint* at ¶ 63. Plaintiff further claims a liberty interest in the information contained in his DNA [9] and alleges the deprivation of that interest by retention and disclosure of that information. *Id.* at ¶ 66. At the outset, the Court notes that the United States Court of Appeals for the Sixth Circuit, in an unpublished opinion, has previously upheld the Act against a procedural due process challenge. *Williams v. Ohio Dep't of Rehab. & Corr.*, 3 Fed.Appx. 415, 417 (6th Cir.2001) (affirming this Court's grant of judgment on the pleadings to defendants). In *Williams*, however, the prisoner claimed a property interest in his DNA and complained that that interest had been impinged without notice and an opportunity to be heard when a DNA blood sample was taken pursuant to the Act. *Williams* held that the sample taken pursuant to the Act was nothing "more than a *de minimus* taking, which is not entitled to extensive due process protections." *Id.* (citing *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1207 (10th Cir.1998)).

Plaintiff argues that *Williams* is inapposite because it limited its analysis to property interests and did not consider the liberty interests raised by plaintiff in the instant action. While defendants do not challenge this argument, defendants do suggest that the proper analysis is that set forth by the United States District Court for the District of Columbia in *Quander*, 370 F.Supp.2d at 90:

> In resolving claims that an individual's procedural due process rights have been violated, three factors are considered:
>
> > First, the private interest that will be affected by the official action; second,

---

**9.** This Court concluded, *supra*, that the right claimed by plaintiff in the information contained in his DNA is not a constitutionally protected right. Nevertheless, the Court will evaluate plaintiff's procedural due process claim without regard to that conclusion.

the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. 893).

Applying the three *Mathews* factors, the *Quander* court rejected the plaintiff's procedural due process claim. The court easily concluded that the first and third *Mathews* factors weighed in the government's favor because the offender's significantly diminished privacy right is trumped by the compelling governmental interests in ensuring that offenders do not commit future crimes and in solving both past and future crimes. *Id.* at 79.

The *Quander* court went on to conclude that the remaining *Mathews* factor—the risk of erroneous deprivation—did not require a contrary result. *Id.* First, the DNA Act at issue in that case required a sample only from individuals who had been convicted of certain qualifying offenses. Thus an individual subjected to the intrusion had already been afforded the procedural protections associated with the criminal prosecution on the predicate offense. *Id.* Second, the statute required the removal of an individual's DNA information from the CODIS database should the conviction on the predicate offense be overturned or reversed. *Id.* Third, the individual who asserted that his offense was not a qualifying predicate offense had an adequate legal remedy through the courts. *Id.* Fourth, the statute restricted how DNA samples could be used. Specifically, the DNA sample, once obtained, was sent to the FBI for analysis and inclusion in the CODIS database and such analysis was conducted only to determine "identification information in a bodily sample." *Id.* Thus, the *Quander* court concluded that the risk of erroneous deprivation, while conceivable, was remote and insufficient to merit protection under the due process clause.[10] *Id.*

This Court finds the analysis in *Quander* persuasive and adopts it for analysis of plaintiffs procedural due process claim in this action. That is, the first and third *Mathews* factors weigh in defendants' favor because plaintiff's significantly diminished privacy right as an offender is trumped by defendants' compelling governmental interests in assuring that offenders do not commit future crimes and in solving both past and future crimes. As to the remaining *Mathews* factor—the risk of erroneous deprivation—the facts minimizing the risk of erroneous deprivation found in *Quander* are present here, as this Court has previously concluded in *Williams v. Ohio Dep't of Rehab. & Corr.,* Case No. 2:98–cv–1300, slip op. (S.D.Ohio Dec. 6, 1999) (M.J. King),[11] *aff'd* 3 Fed.

---

10. Similar due process arguments have been rejected by the United States Courts of Appeals for the Ninth and Tenth Circuits. In *Rise v. Oregon, supra,* 59 F.3d at 1562–3, the Ninth Circuit concluded that "the extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not implicate the Due Process Clause." The court also noted that, "because the only criterion under [the DNA Act] for extracting blood is a conviction for a predicate offense, there would be little of substance to contest at any provided hearing." *Id.* at 1563. The Tenth Circuit, relying in part on *Rise,* also rejected the claim that a plaintiff was denied procedural due process when his blood sample was taken. *See Boling v. Romer, supra,* 101 F.3d at 1340–41.

11. Although the plaintiff in *Williams* invoked a property interest in his DNA before the court of appeals, this Court characterized and analyzed his claimed interest as a liberty in-

Appx. 415 (2001). In *Williams,* the plaintiff, like plaintiff here, was subject to the Act following his conviction on a predicate offense. This Court rejected plaintiff's contention that his procedural due process rights were thereby violated:

> Furthermore, even assuming that plaintiff has a procedural due process right that entitled him to a hearing, the fact is that the trial that led to plaintiff's conviction qualifies as that hearing. Plaintiff has already been given an opportunity to be heard on this matter. Given that a conviction for a predicate offense is the only criterion for extracting blood under O.R.C. § 2901.07, to mandate that the State provide plaintiff yet another hearing prior to the extraction of his blood would be to require the State to engage in a meaningless and futile exercise that would provide no advantage to plaintiff. *Rise,* 59 F.3d at 1563.

*Id.* at 12–13 (internal citation omitted).

Further, plaintiff received notice that he would be subject to DNA sampling before the sample was actually taken. *See Deposition of Plaintiff Antoine Wilson* at 26 and Exhibit 1 attached thereto.[12] Moreover, BCI procedure provides for the expungement or deletion of an offender's DNA information from the CODIS database upon a proper request or court order. Indeed, if plaintiff believes that his offense is not a qualifying offense under the Act, he may assert that claim in a declaratory judgment action filed in an Ohio Court of Common Pleas. *See* O.R.C. § 2721.03. Finally, the use of plaintiff's DNA information is explicitly limited to authorized users and for limited purposes. *See* O.R.C. 109.573.

Thus, even viewing the evidence in the light most favorable to plaintiff, there is no issue of material fact as to whether the Act violates plaintiff's procedural due process rights protected by the Fifth Amendment to the United States Constitution. Accordingly, *Defendants' Motion for Summary Judgment* on plaintiffs procedural due process claims is **GRANTED.**

**D. Adverse Impact Claim**

■ Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color and national origin in connection with programs or activities receiving federal financial assistance. The statute also authorizes federal agencies to "effectuate the provisions of [Title VI] by issuing rules, regulations, or orders of general applicability." 42 U.S.C. § 2000d–1. The Department of Justice ("DOJ") has promulgated a regulation prohibiting recipients of federal funds from "utiliz[ing] criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin ..." 28 C.F.R. § 42.104(b)(2) (2000). Plaintiff asks this Court to enforce the DOJ regulation under Section 1983. *Plaintiff's Motion for Summary Judgment* at 44.

Plaintiff's Title VI disparate impact claim must fail. The United States Court of Appeals for the Sixth Circuit has unambiguously held that a federal regulation alone cannot create a right enforceable through Section 1983. *See Johnson v. City of Detroit,* 446 F.3d 614, 629 (6th Cir.2006) (the rule "that a federal regulation alone may create a right enforceable through § 1983, is no longer viable"). Al-

---

terest, much like the interests set forth by plaintiff in this action. *See Williams,* 3 Fed. Appx. at 417 (plaintiff argues that the interest he asserts is not "a liberty interest when in

reality, it is a property interest of the 14th Amendment.")

**12.** Plaintiff's deposition was filed under seal with this Court. *See* Doc. No. 68.

though plaintiff argues that *Johnson* incorrectly applied Supreme Court authority in reaching this conclusion, this Court does not regard itself at liberty to disregard this pronouncement by the Sixth Circuit.

Accordingly, as it relates to plaintiff's disparate impact claim, *Defendants' Motion for Summary Judgment* is **GRANTED.**

**WHEREUPON,** *Plaintiff's Motion for Summary Judgment,* Doc. No. 62, is **DENIED,** and *Defendants' Motion for Summary Judgment,* Doc. No. 61, is **GRANTED.** The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in defendants' favor.